

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------X
UNITED STATES OF AMERICA,
```

18 CR 128 (SJ) (ST)

-against-

ORDER ADOPTING
REPORT AND
RECOMMENDATION

VICTOR KINGSLEY,

             Defendant.
-----------------------------------------------X

APPEARANCES

RICHARD P. DONOGUE
United States Attorney
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Margaret Lee
        Michael Keilty
Attorneys for the government

FEDERAL DEFENDERS
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201
By:    Michelle Gelernt
        Michael Schneider
        Benjamin Yaster
Attorneys for defendant

LAW OFFICE OF RICHARD JASPER
276 Fifth Avenue
New York, NY 10001
By:    Richard Jasper

1

Attorney for defendant

JOHNSON, United States District Judge:

On July 25, 2017, a United States Postal Service ("USPS") employee observed a clear plastic bag containing a cardboard tube and tied by a knot placed on the steps leading to 145-23 222nd Street in Queens, New York (the "Jamaica address"). The package bore a label with the Jamaica address on it and had a United States "Forever" postage stamp but was not delivered by the USPS employee. The employee saw the package on July 26 and July 27, as well, although it had moved from the top step to the second step. On July 28, 2017, the employee saw the package on the ground in front of the mailbox.

At about 4:15pm on July 28, the owner of the property at the Jamaica address, George Wray ("Wray"), opened the package. It exploded. Wray died four days later from the injuries he sustained when the package exploded in his hands.

The remnants of the package were examined by the Federal Bureau of Investigation ("FBI"). Its label was legible. It was addressed to ▇▇ ▇▇▇▇▇▇▇▇) at the Jamaica address. The sender label also remained visible and read ▇▇ ▇▇ 2820 Snyder Avenue, Brooklyn, NY 11226" ▇▇' and "the Brooklyn address," respectively).

2

At the time of the explosion, ▓▓▓▓s was a New York City Department ("NYPD") Police Officer assigned to the 67th Precinct, which is located at the Brooklyn address. ▓▓▓▓ at the time, was an NYPD Sergeant also assigned to the 67th Precinct. ▓▓▓▓ never lived at the Jamaica address. However, the name ▓▓▓ ▓▓▓▓ was searched 14 times between December 1, 2016 and July 31, 2017 on whitepages.com, which mistakenly listed the Jamaica address as belonging to someone named ▓▓▓ ▓▓▓▓. Nine of the fourteen whitepages.com searches occurred on two days (December 8 and December 9, 2016). These nine searches were associated with three Internet Protocol ("IP") addresses (the "IP addresses"). A user at one of the three IP addresses continued to search for the only New York-based ▓▓ ▓▓▓▓ on whitepages.com as late as February 16, 2018. On that day, a user of one of the IP addresses also logged into a Facebook account associated with the email address "thegodnamedking@yahoo.com," an account registered to defendant Victor Kingsley ("Kingsley" or "Defendant").

Records obtained by the FBI's Joint Terrorism Task Force ("JTTF") indicate that the IP addresses were associated with Besorene Kingsley, Defendant's mother, at the address where she and Defendant resided (the

3

"Kingsley residence"). The Kingsley residence is located within the 67th Precinct.

Several years earlier, on January 4, 2014, Defendant was arrested within the 67th Precinct for criminal possession of a weapon, obstruction of governmental administration, disorderly conduct and resisting arrest. The charges were ultimately dismissed after a successful motion to suppress. However, it was discovered by the JTTF after Wray's death that individuals who were either in fact or mistakenly thought to be involved in Kingsley's 2014 arrest were contacted periodically between 2014 and 2017 from someone in the Kingsley home.

Someone telephoned the arresting officer, ███████, from the Kinsgley home following the arrest. A call was also made from the Kingsley home to ███████ ███████ in East Syracuse, New York on June 23, 2017. (The East Syracuse ███████ are not related to the arresting officer ███████ ███████ Another call was made from Defendant's landline telephone to the Honorable ███████ of the Kings County Criminal Court ███████ ███████'). Another ███████ (unrelated to ███████ ███████) also received a call from Defendant's landline number.

Kingsley was arrested in his home on February 28, 2018. On that day, a search warrant was executed and various items were seized and sent to the

4

P-049

FBI laboratory in Quantico, Virginia ("Quantico") for analysis. Upon Kingsley's arrest, and while he was housed at the Metropolitan Detention Center, samples of deoxyribonucleic acid ("DNA") were taken from him, in the form of buccal swabs. Kingsley was charged with one count of use of a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a) and one count of transportation of explosive material in violation of 18 U.S.C. § 842(a)(3)(A). The indictment was later superseded to include a second count under 18 U.S.C. § 2332a(a), after items seized from Kingsley's home suggested that Kingsley was in the process of creating a second explosive device, this one intended for the wife of a different New York City Police Officer. (Dkt. No. 24.)

In January of 2019, Quantico discovered male DNA from certain items seized from Kingsley's home, including metal pipes and end caps. FBI lab reports indicate Quantico's need for a "confirmation sample . . . to provide a conclusion about this possible DNA association" between the items seized and Kingsley.

On June 14, 2019, Magistrate Judge Pollak issued a search and seizure warrant (the "Warrant") authorizing the additional acquisition by the government of buccal swab samples of Kingsley's DNA. Kingsley moved to quash the Warrant and the motion was referred to Magistrate Judge Steven

5

Tiscione. Judge Tiscione held a hearing on July 22, 2019 and issued a Report and Recommendation ("Report") on August 27, 2019. In the Report, Judge Tiscione recommends denying Kingsley's motion to quash the Warrant.

Kingsley objects to the Report's conclusion that the government's taking of an additional set of buccal swabs is a reasonable search under the Fourth Amendment to the United States Constitution. Based on a de novo review of the submissions of the parties; a review of the record before Judge Tiscione; and for the reasons stated below, the report is ADOPTED.

## DISCUSSION

A district court judge may designate a magistrate judge to hear and determine certain motions pending before the Court and to submit to the Court proposed findings of fact and a recommendation as to the disposition of the motion. See 28 U.S.C. § 636(b)(1). Within 10 days of service of the recommendation, any party may file written objections to the magistrate's report. See id. Upon de novo review of those portions of the record to which objections were made, the district court judge may affirm or reject the recommendations. See id.

"It can be agreed that using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search. Virtually any intrusion into the human body…will work an invasion of cherished personal

P-049

security that is subject to constitutional scrutiny." Maryland v. King, 569 U.S. 435, 446 (2013) (citations omitted). "The fact that an intrusion is negligible is of central relevance to determining reasonableness, although it is still a search as the law defines that term." Id. "Obtaining buccal swabs is a minimally-intrusive process, and if the United States establishes reasonable individualized suspicion that the procedure will lead to admissible DNA evidence in a criminal case, the Court will ordinarily authorize it." United States v. Lewis, 2018 WL 1251397, at *1 (W.D.N.Y. Mar. 12, 2018) (citation omitted) (granting government's motion to take a successive buccal samples from the defendant where government "hope[d] to link [the defendant] to the firearms recovered…by matching his DNA to the genetic material it may locate on the weapons").

In this case, the government requests a fresh sample because the lab at Quantico's practice is to make *direct* comparisons. Kingsley disputes the taking of additional samples because the government has not represented that the prior swabs are unusable. While mindful of Kingsley's right to freedom from unreasonable seizures, the Court must also consider the nature of this case. Kingsley is accused of using a weapon of mass destruction to cause the death of another, as well as attempting to use a second weapon of mass destruction on a second individual. It has yet to be determined by the

7

P-049

Department of Justice whether the top Count of the Superseding Indictment will carry the possibility of the imposition of the death penalty. With Kingsley's life itself possibly at stake, this Court does not find the taking of additional buccal swabs from him to be an unreasonable search and, out of an abundance of caution, declines to deviate from Quantico's specimen collection protocols. For the foregoing reasons, and for the reasons stated in the Report, the Report is ADOPTED and Kingsley's motion to quash the Warrant is DENIED.

SO ORDERED.

s/ Sterling Johnson, Jr.

Dated: December 3, 2019
Brooklyn, New York

Sterling Johnson, Jr., U.S.D.J.

P-049